IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: W.R. GRACE & CO., et al., | ) ) | |
| Debtors. | ) ) | |
| Garlock Sealing Technologies LLC, et al. | ) ) | |
| Appellants, | ) | Civil Action No. 11-199 (RLB) |
| v. | ) ) | |
| W.R. Grace & Co., et al., | ) ) | |
| Appellees. | ) ) | Bankruptcy Case No. 01-1139 (JKF) |

**GARLOCK SEALING TECHNOLOGIES LLC'S MOTION FOR REARGUMENT, REHEARING AND/OR TO ALTER OR AMEND THE JUDGMENT**

Pursuant to Bankruptcy Rule 8015, Federal Rule of Bankruptcy Procedure 9023, Federal Rule of Civil Procedure 59(e), and District of Delaware Local Rule 7.1.5, appellant Garlock Sealing Technologies LLC ("Garlock") respectfully moves the Court for reargument, rehearing and/or to alter or amend the judgment in this case.

**CONCISE STATEMENT OF ISSUES**

On November 28, 2011—five months after all briefs in this appeal had been filed and oral argument heard—Garlock and its co-debtors filed a Joint Plan of Reorganization (the "GST Plan") in their chapter 11 cases pending in the United States Bankruptcy Court for the Western District of North Carolina. The Court obtained a copy of the GST Plan and decided, without briefing or argument, that Garlock no longer had any risk of paying any joint and several jury verdicts, and therefore will never have reason to seek contribution from Grace or setoff against a plaintiff by virtue of a payment Grace has made to such plaintiff. Memorandum Opinion at 185-

4313743

1

86 (the "Decision"). Based on this conclusion, the Decision denies Garlock's appeal and objections to the Grace Plan for lack of standing.

The Decision overlooks or misapprehends several material factual and legal matters.

**First, the Decision is based on a material misreading of the GST Plan.** The decision mistakenly concludes that the GST Plan channels all Garlock claims to a trust. In fact, contrary to the Decision, the GST Plan would pass through to reorganized Garlock thousands of claims, holders of which could pursue joint and several liability judgments against Garlock. Garlock continues to face the risk of judgments implicating contribution and setoff rights.

**Second, the Decision misapprehends the status of Garlock's chapter 11 case.** The GST Plan has been proposed but has not been accepted by asbestos claimants or confirmed by the court. Merely proposing the GST Plan has provided Garlock with no relief.

**Third, the Decision is inconsistent with controlling precedent and decisions in other circuits.** The universal rule is that potential alternative avenues of relief, such as Garlock's bankruptcy case, do not deprive a party of standing.

**Finally, the Decision overlooks evidence that the Grace TDP would be unable to properly handle contribution claims.** The Decision concludes that Garlock offered no evidence, but it is not disputed that the Grace Trust will not pay asbestos claims in full, adversely affecting Garlock's contribution rights as well as its setoff rights and giving it standing to object.

Because nothing in Garlock's bankruptcy case has affected its standing to object to the Grace Plan, Garlock respectfully submits that the Court should grant rehearing.

## I. The Decision Misreads the GST Plan.

Garlock does not object to the Court taking judicial notice of the pleadings in Garlock's bankruptcy case. However, the Decision incorrectly interprets the GST Plan as channeling all

4313743

2

asbestos claims against Garlock to a trust, leading the Court to conclude that Garlock itself will never again face the risk of paying joint and several verdicts and therefore no longer has standing. The following analysis is central to the Decision:

> Under § 524(g), and the terms of Garlock's Plan, all of Garlock's asbestos liabilities—both current and future—will be channeled to a trust akin to Grace's trust in the instant case. This trust will assume Garlock's liabilities, and these claims will be settled in accordance with the terms set forth in Garlock's own plan of reorganization. Given its exit from the tort system and the filing of its own reorganization plan, *Garlock will no longer be at risk of paying any joint and several jury verdicts, and therefore will have no reason to seek contribution or set-off from Grace or any other co-defendant.* Thus, armed with the protective shield of its own asbestos trust and channeling injunction, Garlock has insulated itself from both its own liability, as well as any shared liability between it and Grace.

Decision at 185-86 (emphasis added).

This is not correct. Under the GST Plan, thousands of asbestos claims would *not* be channeled to a trust but instead would be asserted directly against reorganized Garlock, with claimants having the option to pursue litigation and, if successful, be paid in full by reorganized Garlock:

> Responsibility for GST Asbestos Claims will be divided between Reorganized GST and a post-confirmation trust, the "GST Asbestos Trust." *Reorganized GST shall assume, liquidate, and pay Allowed Current GST Asbestos Claims* and the GST Asbestos Trust shall assume, liquidate and pay Allowed Future GST Asbestos Claims.

GST Plan § 2.1 (emphasis added; Plan attached hereto as **Ex. 1**).[1]  See also, GST Plan § 5.4. The claims channeled to Garlock, "Current GST Asbestos Claims," would include every claim that arises prior to entry of an order confirming the GST Plan. *See* GST Plan Ex. A-1 (Glossary of

---

[1] Due to their volume, exhibits have only been included with this pleading as filed with the Court (and served via electronic ecf notice) and as served by hardcopy on the Debtor.  If you have not received a hard copy of the exhibits, such exhibits may be obtained from the cm/ecf system or by request to the undersigned counsel

4313743

Terms) ¶ 41 (attached hereto as **Ex. 2**).[2] This includes three categories: (1) approximately 100,000 claims pending as of the June 5, 2010 petition date, *see* Disclosure Statement For Debtors' Joint Plan of Reorganization ("Disclosure Statement," attached hereto as **Ex. 5**) § 2.4.3; (2) thousands of unknown asbestos claims that have arisen in the twenty months since the petition date; and (3) more unknown asbestos claims that have not yet arisen but will arise in the future before confirmation.

Moreover, under the GST Plan's "Litigation Option," Current GST Asbestos Claimants have the right to assert claims in court directly against Garlock, seek jury trials, and attempt to obtain joint and several judgments against Garlock. GST Plan § 2.1. Garlock, not a trust, will be required to assume and defend all of these Current GST Asbestos Claims and pay in full any such claims that are allowed. *See* GST Plan §§ 2.1, 2.2.4, 2.3.2, 5.4; Disclosure Statement § 1.2.2. Garlock will not be protected by a channeling injunction under section 524(g). *See* GST Plan Ex. A-1 ¶ 7 (channeling injunction does not apply to Current GST Asbestos Claims); GST Plan § 8.2 (same).[3]

In recognition of Garlock's continued risk of suffering joint and several judgments, the GST Plan expressly preserves Garlock's contribution and setoff rights with respect to the thousands of Current GST Asbestos Claims, which includes Garlock's rights with respect to Grace. *See* GST Plan § 11.3 (describing retained causes of action); Disclosure Statement § 2.3.5.1 (retained causes of action include contribution claims); GST Plan Ex. A-2 § 4.2 (providing for reduction of claims allowed under Litigation Option by offsets to which Garlock

---

[2] The definition also excludes certain claimants who accept the opportunity to opt into other classes and treatments.
[3] Nothing in the Bankruptcy Code requires a debtor to seek section 524(g) protection with respect to all asbestos claims asserted against it.

4313743

is entitled under applicable law) (attached hereto as **Ex. 3**); GST Plan Ex. A-5 ¶ 10 (same) (attached hereto as **Ex. 4**).

The Decision's conclusion that all asbestos claims will be channeled to a trust under the GST Plan overlooks Section 2.1, quoted above, instead reading Section 2.2 as providing "that both Classes 4 [Current GST Asbestos Claims] and 5 [Future GST Asbestos Claims] will be assumed by the trust, and will be processed and paid in accordance with the procedures set forth in Garlock's Plan (Id. at 7, 8.)." Decision at 185 n.155. But this is incorrect, as the Plan makes clear that reorganized Garlock, not the Trust, will be responsible for Current GST Asbestos Claims, including those whose holders select litigation. *See also, e.g.*, GST Plan § 2.2.4(c) ("The sole recourse of the Holder of a Current GST Asbestos Claim against any Asbestos Protected Party on account of such Claim shall be against Reorganized [Garlock] . . . .").

The Decision also misreads Section 7.3 as providing that the trust will assume and process all asbestos claims against Garlock. *See* Decision at 185 n.155. The Decision overlooks Section 7.3.1, which states that the trust's responsibility would be limited to claims that arise *after* the GST Plan is confirmed and inactive asbestos claims that elect to be channeled to the trust. GST Plan § 7.3.1 ("The purpose of the GST Asbestos Trust shall be to, among other things: (i) assume the liabilities for all Future GST Asbestos Claims and Inactive GST Asbestos Claims ..."). The trust would have no responsibility for asbestos claims arising before confirmation, which would be the sole responsibility of Garlock. Plan § 2.2.4(c) ("The sole recourse of the Holder of a Current GST Asbestos Claim against any Asbestos Protected Party on account of such Claim shall be against Reorganized GST . . .").

Based completely on the Court's misreading of the GST Plan, the Court incorrectly concluded that arguments Garlock made in its appeal briefs have become moot or lacking in merit:

> Moreover, Garlock claims that, upon reorganization, it may choose to resolve its current asbestos liabilities but pass its future liabilities back into the tort system, or, in the alternative, may resolve its future asbestos liabilities but pass its current liabilities back into the tort system. Given the recent filing of Garlock's own reorganization plan, this argument is now both moot and without merit.

Decision at 185 n.155. The Court's premise, however, is incorrect. The GST Plan *does* pass responsibility for Current GST Asbestos Claims through to Garlock. Such claimants will be free to sue Garlock and take it to trial if the GST Plan is confirmed. All the rights and defenses that permit Garlock to minimize its liability under applicable law—including its setoff and contribution rights—would be fully preserved.[4]

## II. The Decision Also Misapprehends the Legal Effect of the Filing of the GST Plan.

The Decision also either overlooks that the GST Plan has only been proposed, not confirmed, or misapprehends that simply proposing a chapter 11 plan does not automatically provide relief to a debtor. The Decision states as follows:

> Under § 524(g), and the terms of Garlock's Plan, all of Garlock's asbestos liabilities—both current and future—will be channeled to a trust akin to Grace's trust in the instant case. This trust will assume Garlock's liabilities, and these claims will be settled in

---

[4] The Decision also overlooks that the trust created to pay future asbestos claims under the GST Plan would succeed to, and have an interest in enforcing, contribution and setoff rights against co-defendants, including Grace. Contrary to the Decision's statement that the GST Plan "is noticeably devoid of any mention of a non-consensual trust that would actually litigate claims in the tort system," Decision at 185 n.155, Future GST Asbestos Claimants may also exercise the Litigation Option against the trust, assert claims in court, try their clams before juries, and seek to hold the trust jointly and severally liable for their injuries. Plan § 2.3.2. The GST Plan preserves Garlock's defenses and rights for the benefit of the trust, including setoff rights and contribution claims against co-defendants. *See* GST Plan § 11.3; Disclosure Statement § 2.3.5.1; GST Plan Ex. A-2 § 4.2; GST Plan Ex. A-5 ¶ 10. Thus, even if the GST Plan did channel *all* claims to a trust (which it does not), Garlock and such trust would continue to have a strong interest in preserving Garlock's contribution and setoff rights against Grace.

4313743

accordance with the terms set forth in Garlock's own plan of reorganization. Given its exit from the tort system and the filing of its own reorganization plan, Garlock will no longer be at risk of paying any joint and several jury verdicts, and therefore will have no reason to seek contribution or set-off from Grace or any other co-defendant. Thus, armed with the protective shield of its own asbestos trust and channeling injunction, Garlock has insulated itself from both its own liability, as well as any shared liability between it and Grace.

These conclusions reflect a misunderstanding about the status of Garlock's bankruptcy case. The filing of Garlock's bankruptcy petition achieved nothing more than a stay of asbestos litigation against Garlock; thousands of asbestos lawsuits remain pending against Garlock in courts across the United States. *See* 11 U.S.C. § 362(a). And the filing of the GST Plan provided no relief either, because a plan of reorganization is not a legally enforceable document until it is confirmed. *See* 11 U.S.C. § 1141(a). Because the GST Plan has not been confirmed, Garlock has received no permanent relief of any kind in its bankruptcy case and its objections to the Grace Plan cannot have been rendered moot by those events.[5]

### III. The Decision Is Inconsistent with Controlling Precedent and Decisions in Other Circuits.

The Decision also creates a new rule on standing that is inconsistent with controlling precedent and decisions in other circuits. The Decision holds:

> As previously mentioned, when Garlock filed its own bankruptcy petition, the rules of the game changed significantly. Now, Garlock will resolve its asbestos liability in accordance with the terms of its own new reorganization plan, and without the ability to

---

[5] The GST Plan has already faced vehement opposition from the asbestos committee and future claimants' representative in Garlock's chapter 11 case. They have argued that Garlock may *never* be entitled to relief in its bankruptcy case, claiming that if Garlock can pay all asbestos claims against it in full (as the GST Plan provides), Garlock's case should be dismissed and all the current and future asbestos claims against it should be litigated in the tort system. *See* Memorandum Of Law Setting Forth The Official Committee Of Asbestos Personal Injury Claimants' (A) Limited Objection To Debtors' Motion For Estimation, And (B) Objection To Debtors' Motion For A Bar Date at 2, *In re Garlock Sealing Technologies LLC*, No. 10-31607 (Bankr. W.D.N.C. Jan. 12, 2012) (Docket No. 1791) ("If the Debtors prove solvent, this bankruptcy should be dismissed and the asbestos claims against the Debtors returned to the tort system.").

4313743

> pursue Reorganized Grace as a co-defendant in the tort system. Garlock cannot now assert "some legally protected interest that either has been adversely affected (thereby warranting judicial relief), or that is in actual danger of being adversely affected." *Alcide*, 450 B.R. at 535.

Decision at 188.

The possibility that Garlock will someday confirm a plan of reorganization that renders moot its contribution and setoff rights against Grace does not deprive Garlock of standing to object to Grace's Plan now, before Garlock obtains relief. The Supreme Court held in *Clinton v. City of New York*, 524 U.S. 417 (1998) that a potential alternative avenue of relief does not deprive a party of standing in litigation. There, the federal government argued that the City of New York lacked standing to challenge a line-item veto of a tax forgiveness provision in a bill, simply because New York had also made a waiver request to the Department of Health and Human Services that was still pending and might provide the same relief. *Id.* at 430. The Supreme Court disagreed, finding that New York had standing. *Id.* at 431. Other authorities make clear that a claim for relief in one case (here, Garlock's objection to confirmation) is not mooted by a claim for the same or similar relief in another case (such as Garlock's bankruptcy case). *See* 13B Wright & Miller, Fed. Prac. & Proc. § 3533.2.1 ("The mere pendency of parallel actions seeking the same relief does not of itself moot either action."); *Hamdi v. Rumsfeld*, 294 F.3d 598, 606 n.4 (4th Cir. 2002); *Ten Mile Indus. Park v. Western Plains Service Corp.*, 810 F.2d 1518, 1522 (10th Cir. 1987); *Sierra Club v. Train*, 557 F.2d 485, 488 (5th Cir. 1977); *Short v. Murphy*, 512 F.2d 374, 376 (6th Cir. 1975).

**IV. The Decision Overlooks Evidence That Grace Will Massively Underpay Asbestos Claims Despite Retaining Billions of Dollars in Equity, Impairing the Value of Garlock's Setoff and Contribution Rights**

The Decision also concludes that Garlock offered no evidence that its contribution rights against Grace would not be adequately preserved by the Grace Trust:

4313743

> To the extent that Garlock could somehow obtain an Indirect Claim against Grace in the future—thereby establishing the requisite legally protected interest—the GST Plan will pay this claim in accordance with the TDP. *Garlock has introduced no evidence that the TDP would be unable to properly handle its claim in such a scenario*. As such, Garlock likewise fails to establish that it has standing under the requirements set forth by the Bankruptcy Court.

Decision at 188-89 (emphasis added).

But the Decision overlooks that the Grace Plan admittedly will pay no more than 35% of co-defendants' contribution claims and demands, even though Grace's shareholders are retaining property worth billions of dollars that could be used to pay a greater percentage to more senior creditors through the Grace Trust. *See* Appellant Garlock Sealing Technologies LLC's Opening Brief on Appeal at 27-28. Meanwhile, all of Garlock's rights against Grace will be permanently enjoined and channeled to the Trust. Thus, Garlock's contribution and setoff rights will be directly impaired by the Grace Plan and the Trust will not provide an adequate replacement remedy (among other defects outlined in the substantive portions of Garlock's appellate briefs that the Court did not address because it found Garlock lacked standing). Because Garlock retains its contribution and setoff rights today, and those rights will be directly and adversely affected by the Plan, it clearly has standing to object to confirmation.

*[Remainder of page intentionally left blank]*

4313743

## IV. Conclusion

Garlock respectfully submits that the issue of whether Garlock's filing of the GST Plan deprives it of standing to object to the Grace Plan requires rehearing. The Court never received the benefit of briefing or argument regarding this issue. The Court's conclusion that Garlock lost standing to object to the Grace Plan simply by virtue of having proposed the GST Plan is based on a misapprehension concerning both the legal effect of that filing and the meaning of the GST Plan if ever implemented. Garlock respectfully requests rehearing, reargument and/or that the judgment be altered or amended.

Dated: February 3, 2012

**MORRIS JAMES LLP**

*/s/ Brett D. Fallon/*

Brett D. Fallon (DE Bar No. 2480)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE 19899-2306
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: bfallon@morrisjames.com

-and-

Garland Cassada, Esquire
Richard C. Worf, Esquire
ROBINSON, BRADSHAW & HINSON
101 North Tryon Street, Suite 1900
Charlotte, NC 28246
Telephone: (704) 377-8135
E-mail: GCassada@rbh.com
         RWorf@rbh.com

Attorneys for Garlock Sealing Technologies LLC