# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| | : | |
| W.R. GRACE & CO., *et. al.*, | : | CIVIL ACTION NO. 11-199 (Lead Case) |
| | : | CIVIL ACTION NO. 11-200 |
| | : | CIVIL ACTION NO. 11-201 |
| Debtors. | : | CIVIL ACTION NO. 11-202 |
| | : | CIVIL ACTION NO. 11-203 |
| | : | CIVIL ACTION NO. 11-207 |
| | : | CIVIL ACTION NO. 11-208 |
| | : | CIVIL ACTION NO. 09-644 |
| | : | CIVIL ACTION NO. 09-807 |
| | : | |
| | : | *Procedurally Consolidated*. |
| | : | |
| | : | |

## MEMORANDUM

BUCKWALTER, S. J.[1]                                                                      June 27, 2012

Currently pending before the Court is the Emergency Motion of Appellant Garlock Sealing Technologies, LLC's ("Garlock") to Stay this Court's Amended Memorandum Opinion and Order Pending Appeal to the Court of Appeals. For the following reasons, the Motion is denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The lengthy factual background of this case is one familiar to all relevant parties and the Court. On January 30, 2012, this Court entered its Memorandum Opinion and Order confirming Debtor W.R. Grace & Co.'s Joint Plan of Reorganization in its entirety. Subsequently, Garlock filed what appeared to be a reconsideration motion, entitled a Motion for Reargument, Rehearing, and/or to Alter or Amend the Judgment. (See Docket No. 168.) The Court granted Garlock's

reconsideration request, and gave it the opportunity to once again appear before and have its objections heard by the Court at oral argument on May 8, 2012. On June 11, 2012, this Court filed an Amended Memorandum Opinion and Order, once again confirming the Joint Plan. In this Amended Opinion, the Court dedicated approximately thirty pages to Garlock's objections. Despite finding that Garlock lacked standing to object to the Joint Plan, the Court nonetheless discussed Garlock's arguments on the merits in extensive detail, concluding that its substantive objections were unfounded. On June 25, 2012, Garlock filed the present Emergency Motion, requesting the Court to stay its Amended Memorandum Opinion and Order from going effective pending Garlock's appeal to the Third Circuit.

## II. DISCUSSION

A motion for a stay of a Court's decision is an "extraordinary remedy." See United States v. Cianfrani, 573 F.2d 835, 846 (3d Cir. 1978). When seeking such relief, the moving party bears the burden of showing that the circumstances justify an imposition of the stay. See Nken v. Holder, 556 U.S. 418, 433–34 (2009) (citing Clinton v. Jones, 520 U.S. 681, 708 (1997); Landis v. N. Am. Co., 299 U.S. 248, 255 (1936)); see also In re L.A. Dodgers, LLC, 465 B.R. 18, 28 (D. Del. 2011). The standard for ascertaining whether the imposition of a stay is appropriate is determined by a consideration of four factors:

> (1) [W]hether the stay applicant has made a strong showing that it is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) whether a stay is in the public interest.

Hilton v. Braunskill, 481 U.S. 770, 776 (1987) (further citation omitted); Nken, 556 U.S. at 434

---

[1] Senior United States District Judge for the Eastern District of Pennsylvania, sitting by

(internal citation omitted); Jackson v. Danberg, 656 F.3d 157, 162 (3d Cir. 2011) (internal citations omitted). In order to succeed on such a motion, the moving party must "show satisfactory evidence on all four criteria." In re Turner, 207 B.R. 373, 375 (2d Cir. BAP 1997) (internal citations and quotations omitted); In re Innovative Commc'n, 390 B.R. 184, 187 (Bankr. D.V.I. 2008) (internal citations omitted).

In regard to the first factor, Garlock must show that it is likely to succeed on the merits of its appeal. As the basis of its argument under this first factor, Garlock once again rehashes the allegations it previously argued at length before the issuance of both the initial Memorandum Opinion on January 30, 2012, and the most recent Amended Memorandum Opinion on June 11, 2012. In fact, the text of Garlock's Emergency Motion is essentially a mirror image of its prior briefing submitted to the Court. As previously noted, despite once again concluding that Garlock lacked standing to object to the Joint Plan in its Amended Opinion, the Court nonetheless discussed Garlock's substantive arguments in extensive detail and found them to be without merit. Having now been given the benefit of two oral arguments before this Court and the opportunity to submit over 100 pages of briefing, any finding other than that Garlock's arguments have been awarded ample consideration by this Court is incomprehensible. As such, the Court declines to once again discuss in extensive detail here its reasoning for why Garlock is unlikely to succeed on the merits of its claims. To view its full consideration of these issues, Appellant is instructed to consult the Court's 228-page Opinion, available at In re W.R. Grace & Co., --- B.R. ---, 2012 WL 2130981 (D. Del. June 11, 2012).

The second factor requires Garlock to establish that it will be irreparably harmed absent

---

designation.

entry of a stay. "To establish irreparable harm, plaintiffs must demonstrate an injury that is neither remote nor speculative, but actual and imminent." Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir. 1989) (internal citations and quotations omitted). Here, Garlock's irreparable harm argument is solely premised on the doctrine of equitable mootness—*i.e.,* that Garlock's claims on appeal may become moot if the Joint Plan is consummated before the Third Circuit actually reviews its objections. See In re Cont'l Airlines, 91 F.3d 553, 560 (3d Cir. 2001) (providing the standard for the equitable mootness doctrine in the Third Circuit).[2] The Third Circuit and courts within its appellate jurisdiction have previously recognized, however, that the risk of equitable mootness by itself is insufficient to demonstrate irreparable injury for purposes of a stay. See Rep. of Phil. v. Westinghouse Elec. Corp., 949 F.2d 653, 658 (3d Cir. 1991) ("Certainly the fact that the decision on the stay may be dispositive of the appeal in some cases is a factor that an appellate court must consider, but that alone does not justify pretermitting an examination of the nature of the irreparable injury alleged and the particular harm that will befall the appellant should the stay not be granted."); see also L.A. Dodgers LLC, 465 B.R. 18, 36

---

[2] In analyzing whether a party's objections are equitably moot, the Third Circuit has put forth five factors for the court to consider: (1) whether the reorganization plan has been substantially consummated; (2) whether a stay has been obtained; (3) whether the relief requested would affect the rights of the parties not before the court; (4) whether the relief requested would affect the success of the plan; and (5) the public policy of affording finality in bankruptcy judgments. See Nordhoff Invs., Inc. v. Zenith Elec. Corp., 258 F.3d 180, 185 (3d Cir. 2001) (quoting Cont'l Airlines, 91 F.3d at 560). The issue of whether a stay may be obtained is the subject of the instant Motion. Furthermore, the Court presently has no information before it regarding the substantial consummation of Grace's Joint Plan. As such, the Court need not address these factors at this point in time.

(D. Del. 2011);[3] F.T.C. v. NHS Sys., Inc., No. Civ.A.08-2215, 2009 WL 4729893, at *2 n.5 (E.D. Pa. Dec. 10, 2009); Sentry Select Ins. Co. v. LBL Skysystems (U.S.A.), Inc., No. Civ.A.06-4779, 2007 WL 1854801, at *4 (E.D. Pa. June 26, 2007); Hay Grp., Inc. v. E.B.S. Acquisition Corp., Nos. Civ.A.02-252 & 253, 2003 WL 21293861, at *4 (E.D. Pa. Mar. 04, 2003). Indeed, if

---

[3] Garlock's sole support for its irreparable injury argument is its citation to Los Angeles Dodgers, 465 B.R. 18 (D. Del. 2011). Its reliance on this case, however, is misplaced. That case dealt with an appellant's emergency motion for a stay pending the appeal of a bankruptcy court's order. Id. at 22. On December 13, 2011, the bankruptcy court entered an order approving certain procedures for the licensing of telecast rights. Id. at 26. In this order, the bankruptcy court noted that its memorandum opinion explaining its decision would be issued "shortly thereafter." Id. at 27. The very next day, December 14th, the appellant filed a notice of appeal from the order and an emergency motion to stay it from going into effect pending the outcome of the appeal. Id. On December 15th, the bankruptcy court issued the aforementioned memorandum opinion, in which it waived the automatic fourteen-day stay provided by the Federal Rules of Bankruptcy Procedure. Id. Here, unlike the appellant in Los Angeles Dodgers, Garlock has not acted in a similarly expedited fashion. Oral argument addressing all of Garlock's objections took place on May 8, 2012. The Court entered its Amended Memorandum Opinion and Order on June 11, 2012. At this point, the automatic fourteen-day stay went into effect, precluding Grace's Joint Plan from going effective until this time window lapsed on June 26, 2012. Despite being aware of this time frame, Garlock waited until the eleventh hour to file its Emergency Motion on the evening of June 25, 2012. While the timing of Garlock's Motion is certainly proper under the applicable bankruptcy and civil rules, the Court notes that in order to afford all parties—including the Court—ample opportunity to consider its effects, Garlock should have filed its Emergency Motion immediately after issuance of the Amended Memorandum Opinion and Order on June 11, 2012, and *not* after the fourteen-day automatic stay had lapsed and the Debtor's Joint Plan stands on the verge of going effective.

Even with the timing of its Emergency Motion set aside, however, Garlock's reliance on Los Angeles Dodgers is still inapposite. In that case, the court did recognize equitable mootness as a factor demonstrating that the appellant could be irreparably harmed absent entry of a stay. Id. at 36. The court, however, explicitly pointed out that "the risk of equitable mootness is not, by itself, sufficient to demonstrate irreparable harm to justify a stay pending appeal[.]" Id. (internal citations omitted). Cognizant of this point, the court likewise considered that, without a stay, the appellant would be forced to engage in negotiations with less leverage than it had contracted for and that it would lose "unique sports-related marketing or media opportunities." Id. at 35–36. As such, the Los Angeles Dodgers Court considered equitable mootness as one among several factors indicating irreparable injury on the appellant's part without a stay. Here, by contrast, Garlock points to equitable mootness as the sole basis of its alleged irreparable injury. Reliance on this factor alone, however, is insufficient to establish irreparable injury for purposes of a stay.

5

equitable mootness alone could serve as the basis of irreparable injury, a stay would be issued in every case of this nature pending appeal. Furthermore, in addressing irreparable injury claims, courts have previously held that monetary loss alone cannot constitute irreparable harm. See Schlesinger, 888 F.2d at 975 (citing Doran v. Salem Inn, Inc., 422 U.S. 922, 932 (1975); Sperry Int'l Trade, Inc. v. Gov't of Israel, 670 F.2d 8, 12 (2d Cir. 1982)). Here, Garlock's only alleged irreparable injuries would be monetary losses stemming from state law rights related to contribution and set-off.[4] Irreparable harm, however, is "an injury that 'cannot be redressed by a legal or equitable remedy[.]" L.A. Dodgers, 465 B.R. at 34 (citing Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co., 290 F.2d 578, 595 (3d Cir. 2002)). Garlock's alleged monetary injuries do not equate to such un-redressable harm. Thus, the Court likewise finds that Garlock has failed to establish that, absent a stay, it would be irreparably injured under these circumstances.

The third factor requires Garlock to present satisfactory evidence that imposition of the stay will not substantially injure other parties in the litigation. Grace initially filed for bankruptcy

---

[4] Specifically, Garlock states that it will be irreparably injured because:

[I]f the stay is not granted, the Channeling Injunction will become effective and purport to permanently bar Garlock from exercising any of its state law rights against Grace. Grace may immediately begin consummation of the Plan, which will only pay Garlock at most 35% of its claims for contribution and set-off and will similarly underpay claimants in jurisdiction with joint and several liability for co-defendants, forcing Garlock to pay more than its share of liability.

(Garlock ER Mot. 18.) Not only is this argument solely based on Garlock's alleged monetary damages, but is also essentially a recharacterization of its arguments on the merits. Given that the Court has already awarded ample consideration to Garlock's merits arguments, it need not do so yet again here.

in 2001. Its various creditors, including significantly ill victims of pleural disease and their families, have been awaiting payment for their claims since at least that time. If the stay were issued, these creditors would once again be thwarted along their path to recovery from Grace. There comes a time when finality of litigation is needed. Having already been pending for eleven years, the time for finality has arrived in this case. Allowing otherwise would have detrimental effects for both Grace and its thousands of creditors, who at this point are more than entitled to take steps forward towards emergence from bankruptcy and obtaining payment of their long-awaited claims. As such, the Court finds that entry of a stay would harm the other parties—notably, the Debtor and its other creditors—involved in this litigation.

      The fourth and final factor that the Court must consider is whether a stay is in the public interest. In the bankruptcy context, there is a general public policy weighing in favor of affording finality to bankruptcy judgments. In fact, it has been recognized that: "Public policy weighs in favor of facilitating quick and successful reorganizations of financially troubled companies. This policy is furthered by the policy favoring finality of bankruptcy judgments. When investors and other third parties can rely on a confirmed plan of reorganization and other bankruptcy judgments, they have the footing and confidence they need to pursue investments and business arrangements with the reorganized debtor, all of which foster the debtor's successful reorganization." In re Genesis Health Ventures, Inc., 280 B.R. 339, 346–47 (D. Del. 2002). In Nordhoff Investments, Inc. v. Zenith Electronics Corporation, 258 F.3d 180 (3d Cir. 2001), the Third Circuit addressed the public policy favoring finality in bankruptcy litigation in the context of a stay, stating that:

> Where, as here, investors and other third parties consummate a massive reorganization in reliance on an unstayed confirmation order that, explicitly and as a condition of feasibility, denied the claim for which appellate review is

>sought, the allowance of such appellate review would likely undermine public confidence in the finality of bankruptcy confirmation orders and make successful completion of large reorganization like this more difficult.

Id. at 191 (citing Cont'l Airlines, 91 F.3d at 565) (further citation omitted). Based on this language from our appellate and sister courts, this Court finds that the fourth factor strongly weighs against the imposition of a stay in the instant case.

Finally, the Court pauses to comment on Garlock's failure to even acknowledge that a party seeking a stay under such circumstances may be required to post a supersedeas bond[5] in order to preserve the status quo and protect the bankruptcy estate and its creditors from incurring costs incident to the stay.[6] See In re Adelphia Comm'ns Corp., 361 B.R. 337, 350–51 (S.D.N.Y. 2007). The purpose of the supersedeas bond is to "secure[ ] the prevailing party against any loss sustained as a result of being forced to forgo execution on a judgment during the course of an ineffectual appeal." In re Innovative Comm'ns, 390 B.R. 184, 191 (Bankr. D.V.I. 2008) (internal citations omitted). In previously filed motions, the Court was advised that the quantifiable costs of a stay in this case could range from $77 to $107 million dollars, depending on the length of time that the stay remains in place. (See Doc. 206, 03/16/12, Appellees' Resp. Opp'n to Garlock's Stay Mot., Ex. 1, Decl. of John James O'Connell III, ¶¶ 7, 8.) It has been recognized

---

[5] A supersedeas bond is defined as: "[a] bond required of one who petitions to set aside a judgment or execution and from which the other party may be made whole if the action is unsuccessful." Black's Law Dictionary, 1289 (5th ed. 1979).

[6] The Court notes that the only times Garlock even cursorily makes note of the bond requirement is on page 5 of its brief, stating that: "Both [R]ules [8017(b) and 62(c)] allow the Court . . . to issue a stay without requiring Garlock to post a bond," and in the conclusory sentence of its brief, requesting that "this Court enter a stay without imposing a bond." (Garlock ER Mot. 5, 20.) Other than these two scant references, Garlock does not further acknowledge the necessity of a supersedeas bond in this case.

that "if the movant 'seeks the imposition of a stay without a bond, the applicant has the burden of demonstrating why the court should deviate from the ordinary full security requirement.'" In re Gen. Motors Corp., 409 B.R. 24, 30 (Bankr. S.D.N.Y. 2009) (citing In re DJK Residential, LLC, No. Civ.A.08-10375, 2008 WL 650389, at *2 (S.D.N.Y. Mar. 07, 2008); In re WestPoint Stevens, Inc., No. Civ.A.06-4128, 2007 WL 1346616, at *4 (S.D.N.Y. May 9, 2007)).  Garlock has failed to meet this burden here, and the Court declines to do Appellant's work for it.  Therefore, the Court will merely consider this as another factor weighing against the imposition of a stay under these circumstances.

### III.     CONCLUSION

Garlock's failure to produce sufficient evidence on all four factors, coupled with its lack of acknowledgment of the potential for entry of a supersedeas bond in a case of this magnitude, counsels against a finding that a stay of the Court's Amended Memorandum Opinion and Order is necessary under these circumstances.  As such, Garlock's Emergency Motion is denied.

An appropriate Order follows.