# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| W.R. GRACE & CO., *et. al.*, | : | **CIVIL ACTION NO. 11-199 (Lead Case)** |
| | : | **CIVIL ACTION NO. 11-200** |
| | : | **CIVIL ACTION NO. 11-201** |
| Debtors. | : | **CIVIL ACTION NO. 11-202** |
| | : | **CIVIL ACTION NO. 11-203** |
| | : | **CIVIL ACTION NO. 11-207** |
| | : | **CIVIL ACTION NO. 11-208** |
| | : | **CIVIL ACTION NO. 09-644** |
| | : | **CIVIL ACTION NO. 09-807** |
| | : | |
| | : | *Procedurally Consolidated*. |
| | : | |
| | : | |

## MEMORANDUM

BUCKWALTER, S. J.[1]                                                                                                                                                          July 23, 2012

Currently pending before the Court is the Motion of Appellant Anderson Memorial Hospital ("AMH") for Relief from this Court's Order and Memorandum Opinion Affirming Confirmation Order. For the following reasons, the Motion is denied.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The lengthy factual background of this case is one familiar to all relevant parties and the Court. On April 2, 2001, Debtor W.R. Grace & Co. ("Grace" or "Debtor") filed for Chapter 11 bankruptcy. At the time of the Debtor's bankruptcy filing, Avellino & Bienes v. M. Frenville Co., (In re M. Frenville Co.), 744 F.2d 332 (3d Cir. 1984) ("Frenville") provided the governing test in the Third Circuit for when a claim arose under the Bankruptcy Code. The Frenville test dictated that a claim arose when a right to payment accrued under state law. Id. at 337.

---

[1] Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

In 2002, Grace attempted to organize all the property damage claims brought against it, and sought a centralized way to provide notice to all potential claimants. The result was the Summary Bar Date Notice Program ("Bar Notice"), which was published in thousands of newspapers and periodicals, and was estimated to reach 83% of adults nationwide. On April 22, 2002, the Bankruptcy Court issued the Bar Date Order, requiring all property damage ("PD") claimants to file proofs of claims on or before March 31, 2003. On February 27, 2009, Grace filed its Joint Plan of Reorganization ("Joint Plan") before the Bankruptcy Court. On March 9, 2009, the Debtor's Disclosure Statement was approved and ballots were sent out to all claimants in the Class 7A Asbestos PD Claims class, including Appellant AMH. The Bankruptcy Court concluded its confirmation hearings on the Joint Plan in December of 2009.

On June 2, 2010, the Third Circuit issued its precedential opinion in Jeld-Wen, Inc. v. Van Brunt (In re Grossman's, Inc.), 607 F.3d 114 (3d Cir. 2010) ("Grossman's"), in which it overruled the Frenville test and held that "a 'claim' arises when an individual is exposed pre-petition to a product or other conduct giving rise to an injury, which underlies a 'right to payment' under the Bankruptcy Code." Id. at 125. In the context of asbestos litigation, this means that a plaintiff's claim arises at the time when he was first exposed to the asbestos-laden product. Id.

On January 31, 2011, the Bankruptcy Court issued its Memorandum Opinion and Order confirming the Debtor's Joint Plan. Several parties subsequently appealed to this Court. On January 30, 2012, this Court entered its Memorandum Opinion and Order affirming the Bankruptcy Court's findings and confirming the Joint Plan in its entirety. In its Memorandum Opinion, this Court overruled AMH's objections to the Joint Plan, partly basing its holding on the Third Circuit's definition of a "claim" under Grossman's. Since issuance of this Memorandum Opinion and Order,

2

various parties have appealed to the Third Circuit. The deadline to file an appeal has now lapsed.[2] Most recently, on May 18, 2012, the Court of Appeals issued its decision in Wright v. Owens Corning, 679 F.3d 101 (3d Cir. 2012). Wright interprets and applies Grossman's to a specific set of facts. Appellant AMH presently contends that this Court's prior Memorandum Opinion and Order are no longer equitable in light of the Third Circuit's decision in Wright.

On May 29, 2012, AMH filed the instant Motion for Relief from this Court's Order and Memorandum Opinion pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. Grace responded in opposition on June 18, 2012.[3] AMH filed its Reply on June 28, 2012, and Grace filed a Sur-Reply one day later on June 29, 2012.

## II. DISCUSSION

### A. The Grossman's and Wright Decisions

In order to properly ascertain whether or not relief from this Court's prior Opinion is appropriate, a background of the law established by Grossman's and Wright is necessary. In Grossman's, the plaintiff purchased asbestos-containing products for her home from Grossman's, a home improvement and lumber retailer, in 1977. Grossman's, 607 F.3d 114, 117 (3d Cir. 2010). More than twenty years later, Grossman's filed for Chapter 11 bankruptcy, at which time

---

[2] Following issuance of this Court's Memorandum Opinion and Order on January 30, 2012, various parties filed motions to alter and amend the judgment. On June 11, 2012, the Court filed an Amended Memorandum Opinion and Order which took into account the parties' requested amendments. None of the changes in the Amended Memorandum Opinion and Order, however, were related to AMH. All parties relevant to the instant litigation had thirty days from the issuance of the Amended Memorandum Opinion and Order to file their notices of appeal to the Third Circuit. This deadline has now passed, prior to which several parties filed notices of appeal.

[3] Both the Debtor and the Legal Representative for Future Asbestos-Related Property Damage Claimants and Holders of Demands ("Future Claims Representative") filed Responses in Opposition. For ease of reference, the Court collectively refers to the Debtor and the Future Claims Representative hereinafter as "Debtor" or "Grace".

it had actual knowledge that it had engaged in the sale of asbestos-laden products. Id. Grossman's Chapter 11 reorganization plan was confirmed in December of 1997. Id. Subsequently, in 2006, the plaintiff developed mesothelioma as a result of exposure to asbestos, and filed suit against Grossman's. Id. Applying the prior Frenville test, the bankruptcy court found, and the district court affirmed, that the plaintiff did not have a claim against Grossman's bankruptcy estate because her symptoms did not manifest until nearly ten years after Grossman's had filed its bankruptcy petition. Id. at 118. On appeal, the Third Circuit overruled the lower courts (as well as prior contradictory caselaw), and established that: "a 'claim' arises when an individual is exposed pre-petition to a product or other conduct giving rise to an injury, which underlies a 'right to payment' under the Bankruptcy Code." Id. at 125. As applied to the plaintiff, this meant that her claims against Grossman's arose in 1977 when she was first exposed to the asbestos. Id.

In Wright, the Third Circuit interpreted and applied its holding in Grossman's to a putative class of plaintiffs seeking damages related to roofing shingles. Wright, 679 F.3d 101 (3d Cir. 2012). In that case, two separate and unrelated plaintiffs installed shingles manufactured by Owens Corning on their roofs. Id. at 103. One plaintiff installed the shingles in 1999, while the other had installed them in 2005. Id. The shingles were subsequently determined to be defective and both plaintiffs therefore filed warranty claims against Owens Corning in 2009. Id. In 2000, however, Owens Corning had filed for Chapter 11 bankruptcy. Id. The debtor's reorganization plan was confirmed by the bankruptcy court in September of 2006. Id. At the time, the Frenville test was still applicable law. Id. at 104. As such, the plaintiffs were precluded from filing proofs of claims against the debtor and participating in the bankruptcy proceedings. Id. In light of the Third Circuit's decision in Grossman's, however, the Wright plaintiffs requested the court to

reassess its potential claims against Owens Corning. The Third Circuit ultimately extended the reach of Grossman's, holding that a "claim" arises in bankruptcy when an individual is exposed pre-petition, *as well as pre-plan confirmation*, to the debtor's defective product or other conduct giving rise to injury that underlies a right to payment under the Bankruptcy Code. Id. at 107. The Third Circuit then proceeded to apply its newly-expanded definition to the factual scenarios presented by the two plaintiffs in Wright. Under Frenville, neither plaintiff held a claim against Owens Corning until the defects in their shingles manifested in 2009. Under Grossman's and Wright, however, the plaintiffs held claims against the debtor in 1999 and 2005 when they first installed the shingles on their roofs. Id. Because neither plaintiff would have understood that he held a claim at the time of Owens Corning's bankruptcy, the Third Circuit held that neither was afforded adequate due process. Id. at 109.

### B. AMH's Requested Relief Pursuant to Rule 60(b)

In light of the Third Circuit's decisions in Grossman's and Wright, AMH presently seeks relief from the Court's previous Memorandum Opinion and Order confirming the Joint Plan pursuant to Rule 60(b) of the Federal Rules of Civil Procedure.[4]

As an initial matter, the Court notes that the procedural vehicle AMH utilizes to seek relief—Federal Rule of Civil Procedure 60(b)—is generally inapplicable in appellate bankruptcy proceedings. As noted by the court in Ben-Baruch v. Island Properties, 362 B.R. 565 (E.D.N.Y. 2007), "[a]ppeals of bankruptcy judgments to district courts are governed by Part VIII of the

---

[4] In its initial Motion for Relief, AMH cursorily states that it requests relief pursuant to subsection (5) of Rule 60(b). (See AMH Mot. Relief 2.) Throughout the remainder of its Motion for Relief and subsequent Reply, however, AMH makes no further reference to this subsection, and instead appears to seek broader relief pursuant to Rule 60(b) overall. As such, given the lack of clarity regarding the basis of Appellant's Motion, the Court will, out of an abundance of caution, consider AMH's request under all relevant subsections of Rule 60(b).

5

Federal Rules of Bankruptcy Procedure [and] . . . Part VIII does not incorporate Fed. R. Civ. P. 60." Id. at 566. Although Bankruptcy Rule 9024 makes Civil Rule 60 applicable to cases arising under the Bankruptcy Code, Rule 60 generally only applies to judgments or orders *of the bankruptcy court*, and *not* to judgments or orders of a district court exercising appellate jurisdiction in a bankruptcy case. Id. (citing Aycock v. Eaton (In re Eichelberger), 943 F.2d 536, 538 n.3 (5th Cir. 1991); Butler v. Merchs. Bank & Trust Co. (In re Butler), 2 F.3d 154, 155 (5th Cir. 1993); In re Lisanti Foods, Inc., No. Civ.A.04-3868, 2006 WL 2927619, at *2 (D.N.J. Oct. 11, 2006); In re Brenner, No. Civ.A.89-8322, 1991 WL 239942, at *1–2 (E.D. Pa. Nov. 8, 1991); In re Conn Aire, Inc., 91 B.R. 462, 462 n.2 (M.D. Tenn. 1988); In re Shiflett, No. Civ.A.87-719, 1988 WL 62508, at *1 (D. Md. June 9, 1988); English-Speaking Union v. Johnson, 353 F.3d 1013, 1019 (D.C. Cir. 2004)); see also In re Bli Farms P'ships, 465 F.3d 654, 657–58 (6th Cir. 2006). Given that this Court is presently exercising its appellate jurisdiction over the instant litigation, it would appear that Rule 60(b) cannot serve as the basis for AMH's present Motion. In any event, given that both parties have fully briefed and argued their positions pursuant to Rule 60(b) and that AMH nonetheless fails to satisfy the requirements set forth by that Rule, the Court will consider the parties' arguments based on Rule 60(b) below.

> Rule 60(b) of the Federal Rules of Civil Procedure provides that:
>
> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  In the instant litigation, it is evident that only subsections (5) and (6) of Rule 60(b) could potentially apply to the present circumstances, as none of the other subsections are even remotely relevant.

In Horne v. Flores, 129 S. Ct. 2579 (2009), the Supreme Court recognized that Rule 60(b)(5) "provides a means by which a party can ask a court to modify or vacate a judgment or order if a significant change in either factual conditions or in law renders continued enforcement detrimental to the public interest." Horne, 129 S. Ct. at 2593 (internal citations and quotation marks omitted).  Horne dealt with relief sought from an "institutional reform injunction"—*i.e.*, a public policy injunction aimed at changing the internal structure of a society—in the public education context.  In finding that Rule 60(b)(5) relief was appropriate, the Supreme Court noted that "[i]njunctions of this sort bind state and local officials to the policy preferences of their predecessors" and that significant public interests were at play because when "officials inherit overbroad and outdated consent decrees that limit their ability to respond to the priorities and concerns of their constituents, they are constrained in their ability to fulfill their duties as democratically-elected officials." Id. at 2594 (internal citations, quotations, and alterations of text omitted).

In contrast to the institutional reform litigation presented in Horne, there is no comparable public interest at risk here. To the contrary, it has been recognized that the public has a significant interest in affording finality to bankruptcy judgments. More specifically, "[p]ublic policy weighs in favor of facilitating quick and successful reorganizations of financially troubled companies. This policy is furthered by the policy favoring finality of bankruptcy judgments. When investors and other third parties can rely on a confirmed plan of reorganization and other bankruptcy judgments, they have the footing and confidence they need to pursue investments and business

7

arrangements with the reorganized debtor, all of which foster the debtor's successful reorganization." In re Genesis Health Ventures, Inc., 280 B.R. 339, 346–47 (D. Del. 2002). As such, the circumstances present here are insufficient to justify relief under Rule 60(b)(5).

The Court next considers whether relief is permissible under the catch-all provision of Rule 60(b)(6), which provides that a court may grant such a motion "for any other reason that justifies relief." See Fed. R. Civ. P. 60(b)(6). The Third Circuit has recognized that relief under this subsection "is available only in cases evidencing extraordinary circumstances." Morris v. Horn, 187 F.3d 333, 341 (3d Cir. 1999) (citing Martinez-McBean v. Gov't of Virgin Islands, 562 F.2d 908, 911 (3d Cir. 1977); Stradley v. Cortez, 518 F.2d 488, 493 (3d Cir. 1975)). It is well established that "[i]ntervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6)." Morris, 187 F.3d at 341 (citing Agostini v. Felton, 521 U.S. 203, 239 (1997)). The Third Circuit has likewise recognized that the extraordinary circumstances standard established by Rule 60(b) is "a strict one" and that such motions should be interpreted narrowly. See Inmates of Allegheny Cnty. Jail v. Wecht, 754 F.2d 120, 127 (3d Cir. 1985). The reasoning behind this strict interpretation is the strong societal interest in the finality of judgments. See Mayberry v. Maroney, 558 F.2d 1159, 1163 (3d Cir. 1977).

In the instant case, AMH requests relief on the grounds that this Court's prior Memorandum Opinion "is no longer equitable in light of the new law established by the Wright decision[.]" (AMH Mot. Relief 2.) The basis of AMH's request, however, does not present a "circumstance[ ] so exceptional that our overriding interest in the finality and repose of judgments may properly be overcome." Martinez-McBean, 562 F.2d at 913 (internal citation omitted). Notably, unlike Grossman's, Wright did not create "new law," as AMH presently asserts. See

Wright, 679 F.3d 101, 103 (3d Cir. 2012) ("This appeal concerns *the application of* our recent decision in [Grossman's][.]") (emphasis added). Rather, Wright's extension of the Grossman's rule is more akin to a "development in the law." As noted above, however, the Third Circuit has expressly recognized that "developments in the law by themselves" are insufficient to constitute extraordinary circumstances warranting relief under Rule 60(b). Morris, 187 F.3d at 341 (citing Agostini, 521 U.S. at 239); see also McCandless v. Vaughn, No. Civ.A.96-2310, 1999 WL 1197468, at *2 (E.D. Pa. Dec. 14, 1999), Allen v. Wydner, No. Civ.A.06-4299, 2008 WL 2412970, at *4 (E.D. Pa. June 10, 2008) (internal citations omitted).

Furthermore, the Supreme Court has likewise recognized that it is improper to grant relief under Rule 60(b)(6) if the aggrieved party could have reasonably sought the same relief by means of appeal. See Klaprott v. United States, 335 U.S. 601, 613–14 (1949); Ackermann v. United States, 340 U.S. 193, 198 (1950)) (providing that it is a "'well established principle that a motion under Rule 60(b) may not be used as a substitute for appeal.'"); see also Martinez-McBean, 562 F.2d at 911 (quoting In re Imperial "400" Nat'l, Inc., 391 F.2d 163, 172 (3d Cir. 1968). The reasoning behind this prohibition is that the "[f]iling a notice of appeal automatically transfers jurisdiction from the district court to the appellate courts" so as to avoid issues related to "concurrent jurisdiction." Main Line Fed. Sav. & Loan Assoc. v. Tri-Kell, 721 F.2d 904, 906 (3d Cir. 1983) (citing Hovey v. McDonald, 109 U.S. 150, 157 (1883)) (further citation omitted). Although Rule 60(b) presents a limited exception to the automatic transfer of jurisdiction to an appellate court, the Third Circuit has cabined this exception by making clear that:

> While an appeal is pending, a district court . . . has the power both to entertain and to deny a Rule 60(b) motion. If a district court is inclined to grant the motion or intends to grant the motion . . . it should certify its inclination or its intention to the appellate court which can then entertain a motion to remand the case. Once remanded, the district court will have power to grant the motion, but not before.

Venen v. Sweet, 758 F.2d 117, 123 (3d Cir. 1985) (internal citations omitted); see also Tri-Kell, 721 F.2d at 906 (same).

Here, AMH already filed its notice of appeal to the Third Circuit on July 10, 2012. (See Bankr. No. 11-199, Doc. No. 235.) There is nothing in the record indicating that, on appeal, AMH will be prevented from asserting its claims based on Wright. Indeed, AMH admits as much in its Reply brief, stating that: "[w]hile [AMH's] arguments *can* be raised on appeal, . . . there is no sound reason why this Court should not avail itself of the opportunity to do so before the case goes up on appeal." (AMH Reply Br. 2) (emphasis in original). Contrary to AMH's assertion, however, there *are* sound reasons for this Court to deny its requested relief here. Notably, AMH will have a full and fair opportunity to argue these issues on appeal. Further, Third Circuit precedent dictates that this Court should decline to entertain such a Motion out of respect for the finality of judgments in bankruptcy proceedings, so as to avoid the difficulties associated with concurrent jurisdiction. See Martinez-McBean, 562 F.2d at 911; Imperial "400", 391 F.2d at 172; Venen, 758 F.2d at 123; Tri-Kell, 721 F.2d at 906; Mayberry, 558 F.2d at 1163. Moreover, according to the Rule 60(b) motions procedure set forth by the Third Circuit in Venen and Tri-Kell, at this point in time the Court only has the power "to entertain and to *deny*" a Rule 60(b) motion. Venen, 758 F.2d at 122 (emphasis added); Tri-Kell, 721 F.2d at 906. This Court presently lacks the authority to grant AMH's motion unless and until the Court of Appeals entertains and grants a motion for remand on AMH's behalf. See Venen, 758 F.2d at 123 ("[A] district court . . . should certify its inclination or its intention [to grant a Rule 60(b) motion] to the appellate court which then entertain a motion to remand. . . . Once remanded, the district court will have the power to grant the motion, but not before."). Given these considerations, the Court

likewise declines to grant AMH's Motion on these grounds.

Finally, the Court notes the speculative nature of AMH's request for relief under Wright. As discussed in detail above, Wright extended the reach of Grossman's to include all post-petition and pre-confirmation individuals that may potentially hold claims against the debtor. Wright, 679 F.3d at 107. As applied to the instant litigation, this means that any individual who was exposed to Grace Asbestos prior to the Joint Plan's confirmation by the Bankruptcy Court in January of 2011 potentially holds a claim against Grace. AMH does not, however, identify any such post-petition and pre-confirmation individual in the Grace bankruptcy who would be affected by the Wright decision. To the contrary, AMH is a known claimant in this litigation that has already filed its proofs of claims against the Debtor. As such, it cannot presently contend that Wright somehow affects its rights here such that relief from this Court's prior Memorandum Opinion would be necessary. To the extent that AMH is attempting to assert the due process rights of other unknown claimants under Wright, it lacks the standing to do so. See In re PWS Holding Corp., 228 F.3d 224, 248 (3d Cir. 2000) ("Generally, litigants in federal court are barred from asserting the constitutional rights of others.") (internal citations and quotations omitted); In re Century Glove, Inc., Nos. Civ.A.90-400 & 90-401, 1993 WL 239489, at *2 (D. Del. Feb. 10, 1993). If and when any post-petition and pre-confirmation claimants are identified, then a court will consider the merits of their claims under Wright and determine whether or not they hold claims. This inquiry is simply too speculative at this point in time.[5]

---

[5] The remainder of AMH's arguments regarding the Joint Plan's feasibility, its due process rights, and the propriety of the 11 U.S.C. § 524(g) injunction and corresponding trust are all issues that AMH previously raised before the Court prior to the issuance of the Memorandum Opinion and Order. Indeed, AMH concedes as much: "[t]here is no doubt that [AMH] has raised some of these arguments before." (AMH Reply Br. 7.) Given that the Court has already addressed these issues, it declines to do so again here. To the extent that AMH contends Wright somehow changes the Court's

For the foregoing reasons, AMH's Motion for Relief from this Court's Memorandum Opinion and Order is denied. To allow otherwise would serve only to prolong and complicate an immensely complex and drawn out bankruptcy appeal. At this point in time, Grace's bankruptcy is already docketed and pending review by the Third Circuit. There is nothing preventing AMH from raising the concerns it presently asserts on appeal. Indeed, that is the more appropriate forum to do so at this stage of the proceedings. As such, the chapter of Grace's bankruptcy before the District Court is now closed, and any further issues related to this Debtor's reorganization now properly lie before the Court of Appeals.

An appropriate Order follows.

---

findings related to these issues, such inquiries will be taken up on appeal by the Third Circuit.